UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHAD D. CUMMINGS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No.: 3:07-CV-95 |
| ) | |
| ROBERT SIMS, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION AND ORDER**

This matter is before the court on two motions for summary judgment filed by the defendant, Robert Sims ("Sims"). The first motion was filed on October 29, 2007, and the second was filed on October 30, 2007. The plaintiff, Chad D. Cummings ("Cummings"), who is proceeding *pro se*, filed several responsive pleadings in opposition to the motions.[1] Sims filed reply briefs on January 4, 2008. For the reasons discussed in this Order, the first motion for summary judgment (Docket at 40) is GRANTED and the second (Docket at 44) is MOOT.

**FACTUAL AND PROCEDURAL BACKGROUND**

On March 7, 2007, Cummings filed a Complaint pursuant to 42 U.S.C. § 1983. Docket at 1. Cummings alleges that while he was incarcerated in the Starke County, Indiana, jail, he was denied necessary medical care or treatment. *Id.*, pp. 3-4. Cummings explains that he was arrested on August 28, 2005, and booked into the Starke County jail.[2] *Id.*, p. 3. Cummings

---

[1] Many of these filings by Cummings are duplicative. The most recent "response" Cummings submitted in this case was filed on February 13, 2008. While not each and every one of these filings is completely relevant to the issues before the court, collectively they serve to present Cummings's arguments adequately.

[2] Sims states that the date of Cummings's arrest was August 29, not August 28 as stated in the Complaint. *See* Memorandum of Law in Support of Defendant's Motion for Summary

states that when he was arrested, he informed an officer or officers that he needed certain medication. *Id.* He claims that he suffers from a mental disease or disorder and needs his medication to treat that condition. *Id.* Cummings alleges that jail personnel ignored his repeated requests for medication for a period of a month. *Id.* Cummings states that he told the jail nurse that his "depression was getting worse" but that he still did not receive his medication. *Id.* He states that he was finally seen and "evaluated by a man from Porter-Starke Hospital." *Id.* Cummings claims that this unnamed person from the hospital diagnosed him as "homicidal-suicidal/bi-polar" and concluded that he was "a threat to myself and others." *Id.* According to Cummings, this same person assured him that he would receive his medication and that the jail would "protect" him. *Id.* However, Cummings alleges that he still did not receive medication and that he was simply placed back into the cell block. *Id.* Cummings claims that as a result of this alleged mistreatment, he suffered depression, attempted to commit suicide by cutting himself on the forearms with a razor given to him by jail personnel, and had to be transported to a hospital to receive "32 to 38 stitches." *Id.*, p. 4. After being treated at the hospital, Cummings was returned to the jail, where he was placed in protective custody and given his medication. *Id.* Finally, Cummings alleges that as a result of this situation, he suffered and continues to suffer from "nerve damage and consistent aches" and has a "herniated muscle in my arm that needs fixed." *Id.* at pp. 4-5. Cummings asserts that "Sheriff Sims never took any precaution to my illness to protect me [sic]." *Id.*, p. 3. Sims was the Sheriff of Starke County at the time of the events giving rise to this lawsuit, so Cummings sued him for damages Cummings claims he

---

Judgment ("Defendant's First Memorandum"), Docket at 41, p. 3, n. 2. Actually, in his Complaint, Cummings stated that he was arrested "on or about" August 28, 2005. Complaint, p. 3. The precise date, however, has no bearing on any issue in this case.

incurred as a result of his alleged mistreatment.  *Id*.

Since Cummings was a prisoner at the time he filed his Complaint and since it raised the specter of a Fourteenth Amendment violation, the court reviewed the Complaint according to the "screening procedures" for prisoner complaints contained in 28 U.S.C. 1915A.  In an Order issued on June 26, 2007, the court ruled that Cummings had stated a claim against Sims for inadequate medical treatment, at least sufficiently to withstand summary dismissal at that point.  Docket at 12.  However, the court also explained in that Order that Cummings could prosecute his claim against Sims only in Sims's *individual* capacity and not his official capacity as the Starke County Sheriff.  *Id*., p. 4 (citing *Chavez v. Illinois State Police*, 251 F.3d 612 (7th Cir. 2001) (discussing the inapplicability of the doctrine of *respondeat superior* in § 1983 actions).

On July 23, 2007, after having requested and received the permission of the court to do so, Cummings filed an Amended Complaint.  Docket at 18.  The Amended Complaint does not raise new claims.  Rather, it adds new defendants, whom Cummings identifies only as "John Does" and "Jane Does."  *Id.*, p. 2.  These John Doe and Jane Doe defendants include two first-shift confinement officers at the Starke County jail, a Starke County jail nurse, a Starke County jail "shift commander," a Porter-Starke Hospital "evaluator," and an "emergency room doctor/nurse."  *Id*.  In his Amended Complaint, Cummings repeats his allegations that he was deprived of adequate medical care.  *Id.*, generally.  He also alleges that a doctor informed Sims and a "nurse" (presumably the Starke County jail nurse, although that is unclear) that Cummings needed to be "protected," but still nothing was done to help him.  *Id.*, p. 3.  Cummings alleges that jail personnel as well as Sheriff Sims were aware of his condition and his need for medication, but that they "turned a blind eye" to his needs and/or "purposely wanted to see me

3

hurt myself." *Id.* Cummings claims that certain acts and/or omissions of Sims resulted in his alleged injuries and damages. *Id.*

The court reviewed Cummings's Amended Complaint, also pursuant to the dictates of 28 U.S.C. § 1915A. In an Order issued on July 24, 2007, the court dismissed the "John Doe" and "Jane Doe" defendants and any claims asserted against them, and reiterated that Cummings could proceed with this case against Sims in Sims's individual capacity only. Docket at 20. The court explained in that Order that Cummings could file another motion to amend his Complaint should he be able to actually identify any of the "Doe" individuals, but no such motion was ever filed. (Of course, nothing would prevent Cummings from bringing a subsequent lawsuit against any of those individuals he claims were directly involved in this situation, assuming he can identify them and any applicable statute of limitations has not expired already.) Therefore, this case remains a case against Sims, in his individual capacity only, for alleged violations of Cummings's Fourteenth Amendment rights.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *See id.* at

4

255. However, neither the "mere existence of some alleged factual dispute between the parties," *id.,* 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 692 (7th Cir. 2000).

Summary judgment is not a substitute for a trial on the merits nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enterprises, Inc. v. First Chicago Corp.,* 975 F.2d 1290, 1294 (7th Cir. 1992); *Wolf v. City of Fitchburg,* 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. *See Celotex,* 477 U.S. at 322; *Ziliak v. AstraZeneca LP,* 324 F.3d 518, 520 (7th Cir. 2003). A failure to prove one essential element "necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323.

The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. *Celotex,* 477 U.S. at 325. A plaintiff's self-serving statements, which are speculative or which lack a foundation of personal knowledge, and which are unsupported by specific concrete facts reflected in the record, cannot preclude summary judgment. *Albiero v. City of Kankakee,* 246 F.3d 927, 933 (7th Cir. 2001); *Stagman v. Ryan,* 176 F.3d 986, 995 (7th Cir. 1999); *Slowiak v. Land O'Lakes, Inc.,* 987 F.2d 1293, 1295 (7th Cir.

5

1993).

In addition to this standard of review for motions for summary judgment, the court simultaneously must be mindful of the fact that Cummings is proceeding *pro se*. The standard employed by the courts when examining *pro se* pleadings was explained recently in *Fields v. Roswarski*, 2008 WL 150657 *1 (N.D. Ind., January 11, 2008):

> When reviewing *pro se* complaints, a court must employ standards less stringent than if the complaint had been drafted by counsel. *Haines v. Kerner,* 404 U.S. 519 (1972). A court must accept the well-pleaded factual allegations as true, and "construe such allegations in favor of the plaintiff." *Roots Partnership v.. Lands' End, Inc.,* 965 F.2d 1411, 1416 (7th Cir. 1992). Although ambiguities in the complaint should be interpreted in the plaintiff's favor, *Canedy v. Boardman,* 16 F.3d 183, 188 (7th Cir. 1994), a court need not strain to find inferences favorable to the plaintiff which are not apparent on the face of the complaint, *Coates v. Illinois State Bd. of Educ.,* 559 F.2d 445, 447 (7th Cir. 1977), or ignore factual allegations set forth in the complaint that undermine the plaintiff's claim. *City Nat'l Bank of Florida v. Checkers, Simon & Rosner,* 32 F.3d 277, 281 (7th Cir. 1994).

Accordingly, Cummings's claim, and Sims's motions for summary judgment on that claim, must be considered in light of these standards.

## DISCUSSION

**1. Claim for Deprivation of Fourteenth Amendment Rights.**

As stated at the outset, Sims has filed two motions for summary judgment. In the first one (Docket at 40), Sims moves for judgment as a matter of law in his favor on Cummings's Fourteenth Amendment claim of inadequate medical care or treatment. Defendant's First Memorandum, pp. 1-2. Sims maintains that he is entitled to judgment in his favor because he had no personal involvement in the alleged acts or omissions set forth in Cummings lawsuit, and so Cummings fails to state any viable claim against him. *Id*. In his second motion (Docket at

44), Sims moves for judgment in his favor based on an argument that Cummings failed to exhaust his administrative remedies prior to bringing suit, as required by the Prison Litigation Reform Act ("PLRA").  Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Defendant's Second Memorandum"), Docket at 45, pp. 1-2.  Cummings has filed numerous responsive pleadings in an attempt to stave off summary judgment.  *See* Docket Nos. 46, 49, 50, 51, 57, 58, 59, and 65.  Sims filed two reply briefs in this matter.  *See* Defendant's Reply Memorandum in Support of his Motion for Summary Judgment for Failure to State a Claim ("Defendant's First Reply"), Docket at 61 and Defendant's Reply Memorandum in Support of his Motion For Summary Judgment ("Defendant's Second Reply"), Docket at 62.  Sims's First Reply relates to his motion for summary judgment based on his argument that he had no personal involvement in the events giving rise to Cummings's alleged injuries and his Second Reply relates to his motion on the issue of exhaustion of administrative remedies.

   It is undisputed that Cummings was a pretrial detainee in the Starke County jail at the time of the events giving rise to this lawsuit.  A pretrial detainee's claim alleging inadequate medical care is a claim under the due process clause of the Fourteenth Amendment.  *Chavez v. Cady,* 207 F.3d 901, 904 (7th Cir. 2000) (citing *Bell v. Wolfish,* 441 U.S. 520 (1979)).  Such a claim is analyzed the same way as a convicted prisoner's claim under the Eighth Amendment would be analyzed.  *Higgins v. Correctional Medical Services of Illinois, Inc.,* 178 F.3d 508, 511 (7th Cir. 1999) (citing *Estate of Cole v. Fromm,* 94 F.3d 254, 259 (7th Cir. 1996)).  To prevail on a claim alleging inadequate medical care for a detainee, the plaintiff must prove that the defendant showed deliberate indifference to a serious medical need.  Deliberate indifference is a subjective standard.  *Johnson v. Snyder,* 444 F .3d 579, 585 (7th Cir. 2006).  To demonstrate

7

deliberate indifference, the plaintiff must show that a defendant acted "with a sufficiently culpable state of mind." *Greeno v. Daley,* 414 F.3d 645, 653 (7th Cir.2005) (quoting *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)). Deliberate indifference "is more than negligence and approaches intentional wrongdoing." *Collignon v. Milwaukee County,* 163 F.3d 982, 988 (7th Cir. 1998). To find a prison or jail official liable for denying a detainee humane conditions of confinement, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837. In the case of medical needs, the official must have "subjective awareness" of the serious medical need and then act with indifference to that need. *Johnson,* 444 F.3d at 585 (citing *Riccardo v. Rausch,* 375 F.3d 521, 526 (7th Cir.2004)). The subjective knowledge of a serious medical condition applies to detainees who have emotional or mental disorders that could result in harm. As one court recently explained:

> When the risk of harm is a detainee's suicide or attempted suicide, the plaintiff must show that the defendant (1) subjectively knew that the prisoner was at substantial risk of committing suicide, and (2) intentionally disregarded the risk. *Collins v. Seeman,* 462 F.3d 757, 761 (7th Cir. 2006), citing *Matos v. O'Sullivan,* 335 F.3d 553, 557 (7th Cir.2003), and *Estate of Novack v. County of Wood,* 226 F.3d 525, 529 (7th Cir. 2000). "It is not enough that there was a danger of which a prison official objectively should have been aware." *Estate of Novack,* 226 F.3d at 529. An official's failure to address a significant risk that he should have perceived but did not, while not commendable, does not rise to the level of deliberate indifference. *Farmer,* 511 U.S. at 837.

*Smiley v. Town of Edinburgh, Ind.*, 2008 WL 428483 *3 (S.D. Ind., February 14, 2008).

In this case, Cummings has alleged that he told jail personnel that he took, and needed, medication. Amended Complaint, p. 2. He states that he finally saw a jail nurse "after a few weeks because I informed jailers that I was suicidal." *Id.* Once he finally saw the nurse, he claims he also told her that he "needed my medication because I was feeling suicidal-paranoid."

8

*Id.* Cummings states that the nurse told him she didn't have any medication. *Id.* He says he saw the nurse several more times and that she finally told him "she would see if the Sheriff would approve a doctor from Porter Starke to come evaluate me." *Id.* Cummings claims that the doctor from the hospital diagnosed him as being "homicidal-suicidal." *Id.*, p. 3. Cummings also states that he informed that doctor that he "felt like hurting myself." *Id.* He claims that the doctor told him that he would "inform the staff nurse and they would help me and give me my medication." *Id.* Cummings then alleges that the doctor "informed Sheriff and nurse of the situation[.]" but that the "Sheriff failed to take steps to protect me." *Id.* In addition to monetary damages for pain and suffering, Cummings seeks damages in order to pay for "corrective surgery" he claims he needs to repair damage to his arms that he suffered as a result of his alleged suicide attempt. *Id.*

These allegations by Cummings, if true, might be enough establish that jail personnel knew that Cummings had a mental disorder that required medication, that he was experiencing suicidal thoughts, that this condition needed medical attention, and that they ignored his requests for medical help at least for a period of time. During that period of time, according to Cummings, he attempted to commit suicide.

Sims argues that notwithstanding Cummings's allegations, he cannot be held liable for any alleged deprivation of rights plaintiff may have suffered. Sims argues that Cummings "fails to allege personal knowledge or involvement by former Sheriff Robert Sims in the alleged denial of medical treatment to Plaintiff." Defendant's First Memorandum, p. 1. In support of his argument, Sims submitted an affidavit in which he states, in relevant part, as follows:

> 5. I had no contact with Inmate Chad Cummings during his incarceration at the Starke County Sheriff's Department from August 29, 2005 to December 28, 2005.

9

> 6.  I did not have a conversation with the nurse regarding having anyone from the Porter Starke Memorial Hospital evaluate Chad Cummings.
>
> 7.  I was never informed that Chad Cummings was allegedly diagnosed as homicidal–suicidal.
>
> 8.  I was aware that Chad Cummings had seen a nurse but had no personal knowledge of Chad Cummings' medical condition.
>
> 9.  Mr. Cummings never filed a grievance during his incarceration at the Starke County Sheriff's Department.

Affidavit of Robert Sims, ¶¶ 5-9 (attached as Exhibit 1 to Defendant's Motion for Summary Judgment, Docket at 40).  Sims argues, correctly, that "'Section 1983 creates a cause of action based upon personal liability and predicated upon fault.  An individual cannot be held liable in a Section 1983 action unless he *caused or participated* in an alleged constitutional deprivation.'" Defendant's First Memorandum, p. 3 (quoting *Roop v. Squadrito*, 70 F.Supp.2d 868, 873 (N.D. Ind. 1999)) (italics added).  Sims further notes that "[t]he Seventh Circuit recognized that a "'prison official cannot be found liable unless the official knows of and disregards an excessive risk to inmate health or safety.'" *Id.*, p. 4 (quoting *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997)).  Therefore, Sims maintains, since he had no personal contact with Cummings and no participation in the alleged denial of medical treatment, he cannot, as a matter of law, be held liable on Cummings's claims.

Sims's statement of the law is correct and his affidavit expressly states that he had no personal involvement with Cummings.  Furthermore, Sims claims that he never had a conversation with a nurse regarding having a doctor from Porter Starke Hospital evaluate Cummings, nor was he aware of the fact that Cummings had any medical condition that required attention.  Sims Affidavit, ¶¶ 6 and 8.  This directly contradicts the allegations Cummings makes

10

in his Amended Complaint.

Assuming Sims's statements are accurate, he is correct that he cannot be held liable on Cummings's § 1983 claims.  Nonetheless, Cummings argues in one of his responses to Sims's first motion for summary judgment that one of Sims's statements actually demonstrates that the Sheriff did have knowledge of Cummings's condition and that he needed medical attention. Cummings states as follows:

> Mr. Robert Sims denies any involvement with the care or any knowledge of Mr. Cummings's condition. . . . Sims clearly admitted in his own Affidavit . . . at [paragraph] 8 that he was aware that Mr. Cummings had seen the nurse.
>
> . . .
>
> Knox Jail[3] only holds around 50 or less inmates.  Someone needing outside professional attention would cause the sheriff to be involved and aware that there is a situation in his jail and his involvement [is] mandatory.

Plaintiff's Statement to the Court, Docket at 50, pp. 1-2 (internal grammatical errors corrected).[4]

It is Cummings's position, apparently, that Sims's admission in paragraph 8 of his affidavit establishes his personal involvement and responsibility for the denial of medical care Cummings allegedly endured.  Cummings reiterates this argument in another of his responses filed with the

---

[3] Cummings's reference to "Knox Jail" apparently refers to the Starke County Sheriff's Department where he was detained.  Knox is the name of the city in Starke County where the jail is located.

[4] Cummings also states that "Mr. Robert Sims also admitted that Mr. Cummings was seen by a professional from Porter Starke Mental [sic] Hospital, this affirming his knowledge of the situation with Mr. Cummings." *Id.*, p. 2.  This statement is incorrect, as Sims makes no such admission in his affidavit.  Of course, the defendant does not deny that someone from Porter Starke Memorial Hospital may have seen and/or examined Cummings, but he denies having had any personal knowledge or involvement with that examination when it happened.  Cummings may be confusing Sims's after-the-fact acknowledgment of an undisputed fact (that Cummings at some point saw a doctor at the hospital) with an admission that he was aware of it at the time or that he was personally involved in arranging the exam.

11

court. In a document titled "Response to Defendant's Argument that Plaintiff Fails to Allege Involvement on Behalf of Sheriff Robert Sims," Docket at 59, Cummings argues as follows:

> At number 8 of Robert Sims's affidavit he admitted that he was aware that Mr. Cummings was seen by the Jail's nurse. . . . This shows that he was aware of a problem.
>
> . . .
>
> The Knox Jail only holds about 50 male inmates. If an inmate needed to be seen by a specialist because the Jail could not handle the situation and the Jail did make special arrangements to have a doctor from Porter Starke Hospital see Mr. Cummings it would be apparent to a reasonable person in Robert Sims's position as Sheriff of the Jail to be aware of the problem. It would be reckless and unreasonable conduct or a gross departure from ordinary care in a situation where a high degree of danger is apparent, to look away.

Plaintiff's Response, pp. 1-2.

Sims argues that Cummings's response fails to establish personal knowledge and involvement on the part of Sims or to effectively contradict the sworn affidavit submitted by the defendant in which he clearly and expressly denies any knowledge of Cummings's medical situation while he was a detainee in Starke County. Defendant's First Reply, p. 2. Sims argues that "[a]s the Plaintiff has failed to present any evidence that Defendant Sims had any personal knowledge or involvement in the alleged denial of medical treatment, the Plaintiff's arguments remain without merit and Defendant asks this Court to grant summary judgment." *Id.*[5] Sims

---

[5] In his reply brief, Sims also argues that "plaintiff failed to cite any legal authority in support of his arguments[.]" in his response. Sims claims that this "failure to cite legal authority prejudiced the Defendant in his ability to respond to Plaintiff's legal arguments." Defendant's First Reply Brief, p. 2. Clearly, Cummings's failure to cite legal authority is the result of his *pro se* status and the fact that he has no legal training whatsoever. But given the "less exacting standards" to which *pro se* litigants are held, it is common for such plaintiffs, especially plaintiffs who are incarcerated, to present pleadings that are devoid of legal citation. Sometimes this can present a burden to a defendant (or even to the court), who may struggle to ascertain the exact nature of a plaintiff's claims or legal arguments. But in this case, the court fails to see how

also argues that the mere fact that Sims knew "that the Plaintiff had seen the nurse does not rise to the level of knowing and disregarding an excessive risk to inmate health or safety which is required by the Seventh Circuit." *Id.*, p. 3.  Sims also maintains that Cummings merely "*assumes* that Sims must have had personal involvement if a specialist was called; however, the Plaintiff does not provide any information to contradict the affidavit of Sims . . . that specifically states that Sims did not know that anyone from Porter Starke Memorial Hospital was contacted to evaluate Chad Cummings." *Id.*, p. 4 (italics added).  Finally, Sims points out that even assuming, for the sake of argument, that Sims knew that a doctor or "specialist" had been contacted to examine or evaluate Cummings, this "proves [Cummings's] medical needs were attended to and not deliberately and indifferently disregarded." *Id.*

Again, in order for liability to attach to an individual under § 1983, "the plaintiff must show that the defendant (1) subjectively knew that the prisoner was at substantial risk of committing suicide, and (2) intentionally disregarded the risk." *Collins v. Seeman,* 462 F.3d 757, 761 (7th Cir. 2006) (citing *Matos v. O'Sullivan,* 335 F.3d 553, 557 (7th Cir.2003)) and *Estate of Novack v. County of Wood,* 226 F.3d 525, 529 (7th Cir. 2000).  "It is not enough that there was a danger of which a prison official objectively should have been aware." *Estate of Novack,* 226 F.3d at 529.  An official's failure to address a significant risk that he should have perceived but

---

Sims could claim to be "prejudiced . . . in his ability to respond" to Cummings's claims. Cummings states his claim of inadequate medical care, and the factual scenario that underlies it, simply and repeatedly in his various pleadings.  Furthermore, the law in this area has been well established for decades.  Accordingly, to the extent that Sims's argument is intended to persuade the court to apply a more relaxed standard of review *vis-a-vis* the defendant's brief or arguments, the court declines to do so.  In any event, the defendant has presented his arguments and defenses adequately in his briefing.

13

did not, while not commendable, does not rise to the level of deliberate indifference.  *Farmer,* 511 U.S. at 837.  So it is with Sims.  Drawing all inferences favorably to Cummings, the evidence fails to establish that Sims had any subjective knowledge of a danger to Cummings or that Sims personally participated in any way in depriving Cummings of medical care or treatment.  And Cummings's argument that Sims should have somehow known about the situation since the Starke County jail is a relatively small jail is nothing more than speculation.  Notably, Cummings makes no allegations whatsoever that he ever spoke directly to Sims or informed Sims that he was being denied medical treatment.  Nor does he present evidence (or even allege) that he communicated his concerns to Sims through a guard, nurse, or any other jail employee.  And Cummings admits he never filed a grievance while he was incarcerated in Starke County.  *See* Plaintiff's Response, Docket at 57, p. 1.  Simply put, Cummings offers no evidence that Sims was in any way personally aware of or involved in the alleged deprivation of medical care.  Rather, the facts Cummings presents and the arguments he makes are attempts to hold Sims liable for the alleged acts or omissions of jail officers, a jail nurse, and/or employees of the Porter Starke Memorial Hospital.  But since the doctrine of *respondeat superior* is inapplicable to § 1983 actions (*Chavez v. Illinois State Police*, 251 F.3d 612 (7th Cir. 2001)) , these arguments fail to raise a fact issue concerning Sims's liability in this case.

     If Cummings's recitation of the facts is true, and the court makes no finding either way on that point, then what happened to him while he was detained in Starke County was extremely unfortunate and very nearly tragic.  Cummings's allegations raise serious questions about the way he was treated (or rather, *not* treated) while in the Starke County jail.  However, this does not change the fact that Cummings fails to present evidence, even when his allegations are quite

14

liberally construed, to raise a genuine issue of fact concerning Sims's personal involvement in the situation giving rise to this suit. And as the court stated above, since Cummings has not affirmatively identified any other individuals involved in the situation, he cannot proceed in this case against anyone other than Sims. The court obviously offers no opinion as to whether Cummings may have a viable cause of action, under § 1983 or any other civil proceeding, against any of the jail personnel, nurses or physicians who allegedly failed to provide him with necessary and adequate care or treatment. But he fails to state any viable claim against Sims for the reasons discussed.

### 2. Failure to Exhaust Administrative Remedies.

As stated previously, Sims also filed a motion for summary judgment on the issue of the exhaustion of administrative remedies. Defendant's Second Motion for Summary Judgment, Docket at 44. In his memorandum in support of this motion, Sims contends that he is entitled to summary judgment on Cummings's claim since Cummings "failed to exhaust administrative remedies prior to filing suit pursuant to the Prison Litigation Reform Act . . . ." Defendant's Second Memorandum, Docket at 45, p. 1. Sims is correct that the PLRA provides as follows:

> No action shall be brought with respect to prison conditions under § 1983 of this Title, or any other federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). As a general rule, the exhaustion of a prisoner's administrative remedies would involve complying with a jail or prison grievance procedure prior to filing suit. It is precisely such a procedure that Sims claims Cummings failed to follow in this matter. Defendant's Second Memorandum, p. 3 ("the Plaintiff never filed a grievance with the Starke

15

County Sheriff's Department.").[6]  In light of this court's ruling on the substantive issue of Cummings's claim against Sims, this motion for summary judgment is rendered moot.[7]

## CONCLUSION

For the reasons set forth herein, the Motion for Summary Judgment filed by defendant Robert Sims (Docket at 40) is GRANTED and the defendant's second Motion for Summary Judgment (Docket at 44) is MOOT.

Date: February 25, 2008.

/s/   William C. Lee
William C. Lee, Judge
United States District Court

---

[6] Cummings raises an interesting point in his response to this motion.  He presents evidence that he did, in fact, write to the Starke County jail after he had been transferred to a facility in Michigan, asking for a "grievance form from your jail."  Plaintiff's Response, Docket at 51, Exhibit 1.  He states that he never received a response.  *Id.*, pp. 1-2.  While it is true, as Sims points out in his brief, that exhaustion of administrative remedies is a mandatory prerequisite to the filing of a § 1983 action and the Seventh Circuit has adopted a "strict compliance" standard regarding this requirement, (*see Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir.2006)), it is likewise true that "[p]rison officials may not take unfair advantage of the exhaustion requirement, [ ] and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting."  *Dole,* 438 F.3d at 809.  *See also, Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) ("[A] remedy that prison officials prevent a prisoner from 'utiliz[ing]' is not an 'available' remedy under § 1997e(a) . . . ").  If Cummings's letter was received and ignored (the defendant is silent on this point), then the administrative remedy arguably was not "available" to him.  But whether Cummings has succeeded in raising a genuine issue of material fact on this point does not change the outcome in this case.

[7] The requirement that a prisoner exhaust administrative remedies prior to filing an action under § 1983 does not preclude a court from dismissing such an action on its merits, even when administrative remedies were *not* exhausted, when the underlying claim is frivolous, meritless, or fails to state a viable claim against the defendant(s).  42 U.S.C. § 1997e(c).

16